DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

NOAH STERN (CABN 297476)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7320
    FAX: (415) 436-7234
    Noah.Stern@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> LAVINH KAK VONGSOUVANH, <br><br> Defendant. | **CASE NO. CR 19-00106 WHO** <br><br> **GOVERNMENT'S SENTENCING MEMORANDUM** <br><br> Sentencing Date: December 5, 2019 <br> Time: 1:30 p.m. <br> Judge: Hon. William H. Orrick |

## I. INTRODUCTION

On January 13, 2019, defendant Lavinh Kak Vongsouvanh stood on a San Francisco street packed with nightclubs and bars and fired twenty to thirty rounds in the air with a machinegun. Vongsouvanh threw gang signs and said "who wants it?" before getting into his car and fleeing from the scene, ignoring officers trying to stop him. The California Highway Patrol ("CHP") arrested Vongsouvanh for a DUI on January 19, 2019 and found a Glock 19 9mm hand gun that had been modified to fire in fully automatic mode and a loaded 15-round magazine in his car. On September 12, 2019, Vongsouvanh pleaded guilty without a plea agreement to one count of possession of a machinegun, in violation of 18 U.S.C. § 922(o). For the reasons set forth below, the government

requests that the Court sentence Vongsouvanh to 41 months in prison (four months higher than the 37-month sentence recommended by the Probation Office), a three-year term of supervised release (with the conditions recommended by the Probation Office), a $100 special assessment, and order forfeiture of the machinegun and ammunition seized. Vongsouvanh's conduct was extremely dangerous and could have resulted in the death of innocent bystanders. A 41-month sentence is in the middle of the applicable guidelines range and is a just punishment, will provide adequate specific and general deterrence, and will avoid unwarranted sentencing disparities.

## II. BACKGROUND

### A. Mr. Vongsouvanh's Conduct on January 13, 2019

In the early morning hours of Sunday, January 13, 2019, San Francisco Police Department ("SFPD") officers responded to a report of shots fired at the 300 block of 11th Street in San Francisco. *See* PSR ¶ 6. The 300 block of 11th Street is home to numerous popular nightclubs and bars. Officers arrived on scene as Vongsouvanh was getting into his vehicle. *Id.* Officers commanded Vongsouvanh to stop, but he ignored their commands and fled the scene in his vehicle. *Id.* According to witnesses, Vongsouvanh had been standing by his vehicle when he fired twenty to thirty rounds into the air in rapid succession. *Id.* Vongsouvanh was blasting music from his vehicle, gesticulating wildly, and throwing gang signs. *Id.* ¶ 8. One witness heard the defendant say, "who wants it?" *Id.* Officers found multiple shell casings at the scene. *Id.* ¶ 6. No injuries or property damage was reported. *Id.* ¶ 3. Using surveillance footage, SFPD officers identified Vongsouvanh as the shooter and a warrant was issued for his arrest on January 15, 2019. *Id.* ¶ 9-10.

### C. Mr. Vongsouvanh's Arrest

Vongsouvanh was stopped by the CHP at around 1:45 a.m. on January 19, 2019, and was subsequently arrested for driving under the influence of alcohol. *Id.* ¶ 11. A search warrant was executed on Vongsouvanh's vehicle later that morning and officers found a Glock Model 19 9 mm handgun under the driver's floor mat. *Id.* ¶ 12. They found a loaded 15-round Glock magazine on the floor of the back seat. *Id.* The Glock Model 19 had been modified to fire in fully automatic mode and a records check revealed that it had been stolen in the State of Washington. *Id.* ¶¶ 12, 14. Officers also executed a search warrant on Vongsouvanh's residence and found a box of .45 caliber ammunition. *Id.*

¶ 12.

### B. Mr. Vongsouvanh's Criminal History

Vongsouvanh has two prior misdemeanor convictions. First, for forgery in 1999, for which he was initially sentenced to two years probation and 30 days county jail, and was subsequently sentenced to 40 total days of county jail on three separate probation modifications or revocations. PSR ¶ 32. Second, Vongsouvanh was convicted for Driving Under the Influence of Alcohol in 2005, for which he received a sentence of 3 years probation and seven days county jail. *Id.* ¶ 33.

### C. The Indictment and Guilty Plea

A federal grand jury indicted Vongsouvanh on March 5, 2019, charging him with one count of possession of a machinegun, in violation of 18 U.S.C. § 922(o), and one count of possession of an unregistered firearm, in violation of 18 U.S.C. § 5861(d). *See* Dkt. No. 1. Vongsouvanh pleaded guilty to Count 1 of the indictment, possession of a machinegun, without a plea agreement on September 12, 2019. *See* Dkt. Nos. 28 & 30.

## III. SENTENCING GUIDELINES CALCULATIONS

As set forth in the PSR, the Sentencing Guidelines calculations for Vongsouvanh's offense level is as follows:

| | | |
|---|---|---:|
| a. | Base Offense Level, U.S.S.G. §2K2.1(a)(5):<br>(Offense involved a firearm described in 26 U.S.C. § 5845(a)) | 18 |
| b. | Specific offense characteristics under U.S.S.G. Ch. 2<br>(§2K2.1(b)(4)(A) – stolen firearm) | + 2 |
| c. | Specific offense characteristics under U.S.S.G. Ch. 2<br>(§2K2.1(b)(6) – possession of a firearm in connection with another felony offense) | + 4 |
| d. | Acceptance of Responsibility, U.S.S.G. §3E1.1: | - 3 |
| e. | Total Offense Level: | 21 |

*See* PSR ¶¶ 19-29. Vongsouvanh's Criminal History Category is I, PSR ¶ 34, and his Guidelines range for imprisonment is 37 to 46 months. *Id.* ¶ 62.

### A. The Four Level Increase Under § 2K2.1(b)(6) Applies

Vongsouvanh objects to the four-level increase for possession of a firearm in connection with

another felony offense, arguing that he was not charged with a felony in connection with his conduct (other than the offense of conviction) and that his actions would constitute misdemeanor conduct. That argument should be rejected for the reasons set forth by the Probation Office in the PSR: Vongsouvanh's conduct in firing a machinegun into the air constituted the commission of multiple felony offenses under California state law that are distinct from the possession offense to which he has pleaded guilty.

"Another felony offense . . . means any federal, state, or local offense, other than the . . . firearms possession . . . offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1 cmt. 14(C). Vongsouvanh's conduct constituted the commission of multiple felonies under California law, including felony violations of California Penal Code § 246.3 (Discharge of a Firearm with Gross Negligence), § 25850(a) (Carrying a Loaded Firearm in a Public Place), and § 25400(a)(1) (Carrying a Concealed Firearm in a Vehicle).

- **Discharge of a Firearm with Gross Negligence**: California Penal Code § 246.3(a) provides, "Except as otherwise authorized by law, any person who willfully discharges a firearm in a grossly negligent manner which could result in injury or death to a person is guilty of a public offense and shall be punished by imprisonment in a county jail not exceeding one year, ***or by imprisonment pursuant to subdivision (h) of Section 1170***." (emphasis added). In turn, subdivision (h) of Section 1170 provides that "a felony punishable pursuant to this subdivision where the term is not specified in the underlying offense shall be punishable by a term of imprisonment in a county jail for 16 months, or two years or three years." Thus, a violation of Section 246.3(a) of the California Penal Code is punishable by imprisonment for a term exceeding one year. *See Roman-Suaste v. Holder*, 766 F.3d 1035, 1038 (9th Cir. 2014) (holding that penal code section punishable by imprisonment under Section 1170(h) was a felony); *Duncan v. Becerra*, 366 F. Supp. 3d 1131, 1139 (S.D. Cal. 2019) ("punishment may either be a misdemeanor or a felony" where penal code provision provides for "imprisonment in county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170"). Vongsouvanh's discharge of 20-30 rounds into the air on a populated city street was grossly negligent and could have resulted in the injury or death of a person. Bullets fired into the air come down at great speed and have been reported to cause injury or death on many occasions. Therefore, he committed a separate felony offense under California law.

- **Carrying a Loaded Firearm in a Public Place**: California Penal Code § 25850(a) provides, "A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city . . . ." If the person is not the registered owner of the firearm, the offense is punishable by "imprisonment pursuant to subdivision (h) of Section 1170"—i.e., by up to three years in county jail—"or by imprisonment in a county jail not to exceed one year, or by a fine not to exceed one thousand dollars ($1,000), or both that fine and imprisonment." Because Vongsouvanh carried a

loaded firearm that he was not the registered owner of on a public street in San Francisco and that crime is punishable by up to three years in county jail, he committed a separate felony offense under California law.

- **Carrying a Concealed Firearm in a Vehicle**: California Penal Code § 25400(a)(1) provides, "A person is guilty of carrying a concealed firearm when the person . . . [c]arries concealed within any vehicle that is under the person's control or direction any pistol, revolver, or other firearm capable of being concealed upon the person." The offense is punishable "by imprisonment pursuant to subdivision (h) of Section 1170"—i.e., by up to three years in county jail—"or by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment" if (1) the firearm "is loaded, or both it and the unexpended ammunition capable of being discharged from it are in the immediate possession of the person or readily accessible to that person" and (2) the person is not the registered owner of the firearm. Cal. PC § 25400(c)(6). Thus, Vongsouvanh's concealment of his unregistered machinegun within his vehicle and concurrent possession of a loaded magazine nearby was the commission of a separate felony offense.

These California felony offenses were in connection with the offense of conviction here—possession of a machinegun—because Vongsouvanh used the machinegun to commit the California felony offenses. *See United States v. Bare*, 806 F.3d 1011, 1016-17 (9th Cir. 2015) (defendant possessed firearm in connection with another felony offense where he discharged firearm near another person); *United States v. Turpinseed*, 159 F.3d 383, 384, 386 (9th Cir. 1998) (upholding application of enhancement where defendant fired a handgun in the direction of several youths in violation of a Washington assault statute).

## IV.     SENTENCING RECOMMENDATION

### A.     Legal Standard

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), to include:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just

|   |   |   |
|---|---|---|
| 1 |   | punishment for the offense; |
| 2 | (3) | the need for the sentence imposed to afford adequate deterrence to criminal conduct; |
| 3 |   |   |
| 4 | (4) | the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. |
| 5 |   |   |

### B. The Government's Recommended Sentence is Sufficient But Not Greater Than Necessary In Light of the Section 3553(a) Factors

The government recommends that the Court sentence Vongsouvanh to 41 months in prison, which is in the middle of the applicable Guidelines range and is appropriate given the extreme danger created by Vongsouvanh's conduct.

Vongsouvanh blasted twenty to thirty rounds into the air on a San Francisco city block known for its nightclubs and bars, shortly after last call on a Saturday night / Sunday morning. What goes up must come down and bullets that are shot into the sky come down with enough speed to penetrate the skull and cause death. Indeed, injuries and deaths caused by falling bullets have been widely reported and documented. *See, e.g.*, Polly Mosendz & Seung Lee, *Falling Bullets Fall: Los Angeles's Deadly Tradition of Celebratory New Year's Gunfire,* Newsweek (Dec. 31, 2015), *available at* https://www.newsweek.com/celebratory-gunfire-new-years-eve-los-angeles-410598 ("The mortality rate for [those struck by] celebratory gunfire was around 32 percent, or over five times higher than that for other types of gunfire, according to a 1994 study from the King/Drew-UCLA Medical Center."). The danger posed by Vongsouvanh was enhanced by the fact that he fired the machinegun in the middle of San Francisco on a block where many people were present. In short, there was a very real chance that Vongsouvanh's conduct could have injured or killed an innocent bystander.

Vongsouvanh's conduct undoubtedly also put innocent bystanders in great fear. While the PSR states that there are "no identifiable victims," PSR ¶ 15, it also makes clear that a number of witnesses were present when Vongsouvanh fired his machinegun in the air. *Id.* ¶ 8. An individual firing a machinegun into the air on a city street is likely to terrify anyone who sees it. That fear was likely enhanced here by Vongsouvanh's erratic movements and gangs signs as well as his threatening question, "who wants it?" Vongsouvanh's conduct could have lasting effects on those who witnessed it.

Vongsouvanh also continued the dangerous situation he created when he ignored police commands to stop and fled the scene in his vehicle. While the government has not sought a two-point increase under § 3C1.2 of the Sentencing Guidelines for Reckless Endangerment During Flight and no such enhancement has been applied, Vongsouvanh's dangerous flight is relevant to the seriousness of the offense and supports a sentence above the low-end of the guidelines as calculated without that enhancement.

Vongsouvanh's continued possession and concealment of the machinegun within his vehicle was also dangerous and supports a 41-month sentence here. When Vongsouvanh was arrested a few days after the events in San Francisco, the machinegun was found underneath the driver's seat floor mat and a loaded 15-round magazine was found on the floor of the back seat. PSR ¶ 12. Vongsouvanh was, therefore, capable of firing 15 rounds in rapid succession at any time. Vongsouvanh did not keep his illegal machinegun safely locked in a safe; instead, he carried it in his vehicle where it was a danger to officers and the community.

The government would recommend a sentence at the high end of the guidelines or above here absent the following mitigating facts: (1) Vongsouvanh has not had a significant custodial sentence before, (2) Vongsouvanh struggles with alcoholism, and (3) Vongsouvanh reported being sexually assaulted as a child. These mitigating facts, however, do not warrant a sentence of less than 41 months. *First*, although Vongsouvanh has not served a lengthy custodial sentence he has been sentenced to a total of 77 days in county jail over his lifetime. PSR ¶¶ 32-33. These convictions are old, but that is accounted for in his guidelines calculation by the fact that he is in Criminal History Category I. Vongsouvanh's conduct here is significantly more serious than his prior convictions and was committed at a much more mature age—he was 41 when he committed the offense. A 41-month sentence appropriately recognizes those facts. *Second*, Vongsouvanh's struggle with alcoholism does not excuse his conduct and enhances the danger posed by it. Vongsouvanh chose to acquire a machine gun and keep it. These decisions, some of which must have occurred while he was sober, are extremely concerning especially in light of the fact that Vongsouvanh appears to have known that alcohol was a problem for him. *Id.* ¶ 52 ("The defendant has had several periods of sobriety culminating in a return to drinking."). Vongsouvanh had to know that he would be carrying a loaded machinegun while inebriated

but apparently paid no heed to the danger that would create. *Third*, while the sexual abuse that Vongsouvanh reports is repugnant, horrifying and may have had a major impact on his life, there is no clear connection between that abuse and his decision to obtain, carry, and fire a machinegun into the sky. Considering these mitigating facts alongside the danger that Vongsouvanh created and the fear that he caused innocent bystanders, a prison sentence one month less than the middle of the guidelines range is just, and no greater than necessary to accomplish the goals of punishment. The Court should also impose the conditions of Supervised Release recommended by the Probation Office, including the search condition. That condition is warranted given the severity of the instant offense and the need to both deter Vongsouvanh from acquiring a firearm after he is released and ensure that he can be adequately monitored.

**V. CONCLUSION**

For the foregoing reasons, the government recommends that the Court sentence Vongsouvanh to 41 months in prison, a three-year term of supervised release, and a $100 special assessment. The Court should also order Vongsouvanh to forfeit his interest in the firearm and ammunition seized from his vehicle and residence.

DATED: November 28, 2019

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

 */s/ Noah Stern*
NOAH STERN
Assistant United States Attorney